# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHERIE LEHENKY,                        :

    Plaintiff                         :        CIVIL ACTION
                                      :
                                      :        NO. 20-
       v.                            :
                                      :
TOSHIBA AMERICA ENERGY
SYSTEMS CORPORATION,                   :
                                      :
    Defendant                         :

## COMPLAINT

## I.     PRELIMINARY STATEMENT

Plaintiff Cherie Lehenky brings this action against Toshiba America Energy Systems Corporation (hereafter "Defendant") in connection with the February 8, 2018 termination of her employment under Defendant's Drug-free Workplace Policy (hereafter "the Policy"), which both on its face and as applied, violated her legal rights under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et. seq.* and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951 *et seq.* Beginning in 2018, under the supervision of a licensed medical practitioner, Ms. Lehenky was taking an over the counter CBD-oil product derived from hemp to treat an inflammatory auto-immune connective tissue disease which had significantly impaired her mobility and her overall functioning. Defendant required her to appear for a drug test on February 7, 2019, and she provided notice at that time that she was using a CBD product to treat her medical condition which might cause a positive test result. Although it had no reason to doubt that notice, upon receipt of the positive test result Defendant terminated Ms. Lehenky immediately and automatically under its Policy, which neither provided for nor allowed any individualized inquiry as to whether that result derived from her use of an illegal drug as defined

by the Policy itself, which is based explicitly on Schedule I of the Controlled Substances Act, 21 U.S.C. § 802 (b)(26)(B). Likewise, the Policy called for termination even if she had a disability as defined by the ADA and PHRA, and whether or not the ADA prohibited discrimination against her for use of a Schedule I drug under the supervision of a licensed medical professional to treat that disability.   42 U.S.C. §§12111 (6) & 12114.   On its face and as applied, Defendant's Policy violates both of those provisions, and its use of that Policy as the sole basis for Ms. Lehenky's termination constituted illegal employment discrimination. Plaintiff seeks declaratory and injunctive remedies for those violations, including, *inter alia,* compensatory damages and reimbursement for all the emoluments of employment she has lost or will lose as a result of the Defendants' illegal and discriminatory actions. Furthermore, because Defendant drafted its policy to specifically defy and evade the statutory demands of the ADA, Ms. Lehenky seeks punitive damages for the intentional, reckless, and malicious violations of her rights. Finally, she seeks reimbursement for the attorneys' fees and costs she has incurred, and will incur, in the prosecution of this Action.

## II.   JURISDICTION AND VENUE

2.      The Court has jurisdiction under 28 U.S.C. Sec. 1331 as Ms. Lehenky's claim arises under federal law, and also under the ADA, 42 U.S.C. 12117(a).

3.      This Court has jurisdiction over the state law claim under the PHRA under 28 U.S.C. §1637. Venue lies in this court pursuant to 42 U.S.C. §12117(a) because the acts complained of took place in this district.

### III.        PARTIES

4.        The Plaintiff is Cherie Lehenky, an adult individual who resides at 101 Ridge Avenue Coatesville, PA 19320.

5.        The Defendant is Toshiba America Energy Systems Corp., which has offices at 6623 West Washington Street, West Allis, WI 53214.

6.        At all relevant times, the Defendant has employed at least fifteen employees in the United States and at least four in Pennsylvania, and is a covered employer under both the ADA and the PHRA.

### IV.        EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.        On May 2, 2019, the Ms. Lehenky filed a complaint of discrimination against the defendant with the Pennsylvania Human Relations Commission (PHRC), and was assigned docket number 201901673. A true copy of the PHRC complaint is attached hereto as Exhibit E.

8.        On June 23, 2020, the PHRC acknowledged that the Ms. Lehenky's claim had been pending for more than one year and that she had the right to bring an action in court.

9.        On September 21, 2019, Ms. Lehenky filed a copy of her then-pending PHRC complaint with the Equal Employment Opportunity Commission (EEOC), which was docketed as No. 17F202060580. A true copy of the EEOC's signed receipt is attached hereto as Exhibit F.

10.        On July 9, 2020, Ms. Lehenky requested a notice of right to sue from the EEOC. A true copy of that request is attached hereto as Exhibit G.

11.        Ms. Lehenky has satisfied all requirements for the exhaustion of administrative remedies precedent to this action.

IV.         FACTUAL STATEMENT

   A.     Plaintiff's Employment at Toshiba and her Disability

   12.     Ms. Lehenky was employed by Toshiba for approximately eighteen years. For the last three years before her termination, she held the position of Corporate Communications Representative II in which she worked full-time as event planner.

   13.     During the first fourteen years of her employment, Ms. Lehenky worked in the Defendant's office in Chadds Ford, PA, but beginning in 2014, she worked from her own home.

   14.     At all relevant times, Ms. Lehenky was qualified for her job and she faithfully performed her duties in accordance with the Defendant's expectations.

   15.     After a long period of physical discomfort and pain that significantly limited her ability to walk, Ms. Lehenky was diagnosed in 2018 with Paniculitis, which is an inflammatory autoimmune connective tissue disease.

   16.     One of the symptoms of Paniculitis is the appearance of subcutaneous nodules which can be extremely painful and significantly impaired mobility. The inflammation can also damage major body systems, thereby causing serious fatigue and the loss of vitality.

   17.     By the time of her diagnosis in 2018, Ms. Lehenky could only walk with the assistance of a cane due to the accumulation of fluid and tissue damage in her legs.

   18.     There is no specific treatment for Paniculitis. Ms. Lehenky tried a number of topical remedies for the painful plaques and nodules on her legs, but found little relief.

   19.     After hearing reports of good results about the effectiveness of CBD (cannabidiol) oils, Ms. Lehenky sought the advice of a licensed health care physician to investigate whether this might help control her pain and improve her overall functioning.

   20.     Shortly thereafter, Ms. Lehenky began using a CBD product and finally found

4

some relief for her symptoms. A true copy of a report from the Plaintiff's treating physician confirming her treatment with CBD is attached hereto as Exhibit A.

21.    CBD oils are produced from either hemp or the non-germinating parts of a marijuana (cannabis) plant. They may contain a low level of THC (tetrahydrocannabinol), but they are not psychoactive.

22.    The CBD product Ms. Lehenky was using had no negative impact on her job performance. Because it controlled her symptoms, it actually improved her ability to engage in activities across life domains, including, but not limited to work.

23.    None of the Plaintiff's job duties involved or had any impact on public safety. Even if they had, the non-psychoactive CBD product she was using for pain relief would not have impaired her ability to perform her job duties or compromised public safety in any way.

**B.    Toshiba's Revised "Drug Free Workplace" Policy**

24.    On or about January 7, 2019, Defendant promulgated the revision to its "Drug Free Workplace Policy," which is attached as Exhibit B. The Policy provides for random drug testing and the immediate termination of any employee found to have "a detectable amount of any illegal drugs or alcohol while on duty…, regardless whether the employee works in a safety-sensitive position, whether the drug was prescribed legally or not, whether its use was supervised by a licensed health care professional, whether the employee was under the influence of the drug at work, and whether the employee's job performance fell below the standard of care applicable to his/her position.

25.    The Policy states that "[b]ecause federal law prohibits the use of marijuana under the Controlled Substance Act, marijuana is included here as an illegal substance, even in those

jurisdictions where recreational or medical use has been authorized under state law." *Id.* at

Section "L. The Policy defines an illegal substance by reference to Schedule I of the Controlled

Substances Act (hereafter Schedule I"), 21 U.S.C. § 802 (b)(26)(A).

26.     Defendant's blanket termination policy applies to any positive test result even if it

derives from a  "marijuana" derivative that is not defined by federal or state law as an illegal

drug. In direct contradiction to the ADA, the Policy explicitly applies even if the individual has a

disability or is using the product to treat the disability, and/or whether they are using it legally

under the supervision of a health care provider. *Id.; c.f., 4*2 U.S.C. §1211 (6)(A).

27.     There are a number of substances other than marijuana that can produce a positive

test result for THC, but the Policy states that "[a] positive test, in itself, shall constitute a

violation ... and result in immediate termination of an employee." *Id.* at Section "C."

28.     Upon information and belief, the CBD supplement Ms. Lehenky was using to

treat her medical impairment was derived from hemp, not marijuana.

29.     Hemp is legal under both federal and state law, and is not a "drug" defined by the

ADA, and even though it might produce a positive test result for THC, it is explicitly excluded

from Schedule I of the Controlled Substances Act.

30.     Defendant knew or should have known that "oil or cake made from the seeds of

marijuana plants, or any other compound, manufacture, salt, derivative, mixture, or preparation

of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized

seed of such plant which is incapable of germination do not fall within the definition of illegal

drugs under the Controlled Substance Act, and are specifically excluded from Schedule I even

though they may produce a positive result for THC on a drug test. *Id.* at Section "L".

31.     The CBD product Ms. Lehenky was using to control the symptoms of her

disability did not qualify as a "drug" under the ADA and even if it did, she was protected from employment discrimination on that basis if it is "taken under the supervision of a licensed health care professional." 42 U.S.C. §12111(6))(A).

32.    Defendant intentionally drafted the Policy to contradict the ADA's prohibition on discrimination against persons with disabilities on the basis of  a) the "illegal use of drugs" when the employee's use of the drug is "not unlawful under the Controlled Substances Act" and/or b) when the employee is not engaged in the illegal use of drugs but the employer "erroneously regards the employee as engaging" in such use. 42 U.S.C. ¶ 12111 (6)(a); 12114 (a) & (b).

### C.    Plaintiff's Drug Test and Her Automatic Termination

33.    On or about February 5, 2019, Lisa Frank, Defendant's Senior Human Resources Manager, directed Ms. Lehenky to report to a medical laboratory for a random drug screening. That directive is attached hereto as Exhibit C.

34.    This was the first time in the entirety of her 18 years of employment with Defendant that Ms. Lehenky had been asked to submit to a drug screening.

35.    Ms. Lehenky underwent the drug screening on February 7, 2018, after which she notified Ms. Frank that she was using "an over-the-counter supplement" to control the symptoms of her medical condition, and that this might produce a positive result for THC. *See* Exhibit C.

36.    In addition to marijuana metabolites, Defendant ordered the lab to screen for a number of drugs which are not illegal if prescribed by a physician, and are used to treat a number of impairments, illnesses, and medical conditions that may qualify as disabilities under the ADA and the PHRA. A true copy of the list of substances to be screened is attached as Exhibit D.

37.    Defendant's demand that Ms. Lehenky submit to testing for prescription drugs

7

was not job-related and not based upon any legitimate business necessity, and it knew or should have known that it violated her legally protected privacy rights under both state and federal law.

38.     On February 8, 2019, the drug screen came back positive for THC, and on that sole basis Ms. Frank immediately terminated Plaintiff's employment.

39.     Because a positive test result made termination automatic under the Policy regardless of what caused it, Ms. Frank declined Ms. Lehenky's offer to provide documentation that she was using a legal supplement that was prescribed and supervised by a licensed health care professional to treat a debilitating medical condition.

40.     Defendant's actions against Ms. Lehenky were done intentionally and with knowing and reckless disregard for her rights under the ADA and the PHRA.

41.     As a result of Defendant's illegal actions, Ms. Lehenky has suffered financial losses and other compensatory damages, including emotional distress, for which she seeks recompense in this action. Among other things, she seeks reimbursement for her back pay, which, as of 2019, had an annual value of $72,000, plus the possibility of an annual bonus, and was a participant in a number of employee benefit plans.

## V.    CAUSES OF ACTION

### COUNT I: DISPARATE TREATMENT UNDER THE ADA

42.     The allegations set forth in Paragraphs 1-41 are re-alleged and incorporated by reference herein.

43.     Defendant's Drug Free Workplace Policy violates the ADA on its face, and the termination of Ms. Lehenky's employment on the sole basis of that Policy was illegal.

44.     Ms. Lehenky has a legally protected disability under the ADA because she has a physical impairment that (a) substantially limits one or more major bodily functions, including,

8

but not necessarily limited to, the immune system and normal cell growth, as well as one or more major life activities, including, but not necessarily limited to walking, lifting, caring for herself, and working. 42 U.S.C. §12102 (2)(B).

45.     In spite of her disabilities, Ms. Lehenky, was and continues to be qualified to perform the essential functions of her job either with or without a reasonable accommodation.

46.     A "drug" under the ADA is a controlled substance as defined in Schedules I through V of Section 202 of the Controlled Substances Act, 42 U.S.C. §12114 (b)(6).

47.     Defendant discriminated against Ms. Lehenky in violation of her rights under the ADA when it intentionally and/or recklessly proceeded with the automatic termination of her employment upon receipt of the positive drug screen with no individualized inquiry as to whether 1) the product she was using was a "drug" under the Policy and/or the ADA, both of which define that term by specific reference to Schedule I, and therefore exclude CBD products made from hemp and/or marijuana products that derive from the non-germinating parts of marijuana plants, and/or 2) whether the ADA protected Plaintiff's use of the CBD product even if it was a "drug," because it was   supervised by a licensed health care professional and therefore did not constitute the "illegal use of drugs." 42 U.S.C. §§12111 (6) & 12114.

48.     Schedule I drugs are "controlled," and they are not available over the counter.

49.     Even if Defendant's acted as it did because it erroneously regarded Plaintiff as being an illegal user of drugs, that perception derived directly from the design and application of its illegal and automatic termination Policy which allowed no individualized inquiry, and no consideration or investigation of the facts Ms. Lehenky disclosed or any other facts that would have disabused it of its erroneous and discriminatory perception.

50.     Defendant discriminated against Plaintiff in violation of her rights under the ADA even if it erroneously regarded her as having engaged in the illegal use of drugs because when it terminated her employment "on the basis of such use." 42 U.S.C. §12114 (b)(3).

### COUNT II: DISPARATE TREATMENT UNDER THE PHRA

51.     The allegations set forth in Paragraphs 1-50 are re-alleged and incorporated by reference herein.

52.     Ms. Lehenky's impairment constitutes a non-job related handicap or disability as defined by the PHRA. 43 P.S. § 955 (a).

53.     For all the reasons set forth in Count I, Defendant has discriminated against Plaintiff based on her disability and its erroneous perceptions thereof, including its reckless and baseless conclusion that she was a user of a drug that was illegal under federal law, all in violation of her rights under the PHRA.

### COUNT III: DISPARATE IMPACT IN VIOLATION OF THE ADA

54.     The allegations set forth in Paragraphs 1-53 are re-alleged and incorporated by reference herein.

55.     The ADA prohibits employers from utilizing standards, criteria, or methods of administration that have the purpose or effect of discrimination on the basis of disability. 42 U.S.C. §12112 (b) (3).

10

56.    Standards that screen out or tend to screen out an individual with a disability or a class of such individuals constitute "discrimination" under the ADA unless those standards or criteria are job-related and consistent with business necessity.   42 U.S.C. §12112 (b) (6).

57.    Defendant's Policy constitutes a discriminatory method of administration because it calls for the automatic termination of any employee with a disability who has received a positive test result for THC without individualized inquiry as to whether 1) the test result actually derived from the employee's use of a "drug" defined by the Policy or the federal law upon which it is based; 2) the employee used the product that led to the positive result to treat the symptoms of a qualifying disability under the supervision of a licensed health professional; and 3) whether the policy could be modified to accommodate the individual's disability without interfering with the employer's legitimate aim to ensure a drug free workplace. Its termination of Plaintiff's employment on the basis of that policy violated the ADA. 42 U.S.C. §12112.

58.    The Defendant's Policy imposes a qualification standard that is flatly inconsistent with the ADA because it screens out employees with disabilities who require treatment with CBD or other products to mitigate debilitating symptoms that might result in a positive drug test, and who are using such products under medical supervision and/or prescription, and which is not job-related and not required by business necessity.

59.    Defendant discriminated against Plaintiff when it terminated her employment based on a qualification standard that is deliberately and flatly inconsistent with the ADA.

## COUNT IV – DISPRATE IMPACT DISCRIMINATION IN VIOLATION OF THE PHRA

60.     The allegations set forth in Paragraphs 1-59 are re-alleged and incorporated by reference herein.

61.     For all the reasons set forth in Count II, Defendant's Drug-free Workplace Policy has a disparate impact on qualified persons with disabilities and is therefore facially invalid under the PHRA.

62.     Defendant's application of the Policy as the sole basis for Ms. Lehenky's termination constituted unlawful discrimination in violation of 43 P.S. §955(a).

## COUNT V: ILLEGAL MEDICAL INQUIRY IN VIOLATION OF THE ADA

63.     The allegations set forth in Paragraphs 1-63 are re-alleged and incorporated by reference herein.

64.     The Defendant's demand that Ms. Lehenky submit to testing for legal prescription drugs was not job-related or required by business necessity, and it constituted an illegal medical inquiry in direct violation of the ADA. 42. U.S.C. §12112 (d)(4) & §12114.

**WHEREFORE**, Ms. Lehenky respectfully requests legal and equitable relief including:

1.     A declaration that her termination was unlawful;

2.     Back pay;

3.     Reinstatement to her former employment or, in lieu thereof, front pay;

4.     Compensatory damages in an amount in excess of $150,000;

5.     Punitive damages;

6.     All legal fees and costs she and her attorneys have incurred or will incur in the prosecution of this action, and

12

7.   Such other relief as the Court finds appropriate.

**WILLIAM T. WILSON, ESQUIRE**
BAILEY & EHRENBERG, PLLC
120 North Church Street, Suite 109
West Chester, PA 19380
(484) 605-1146

wtw@becounsel.com

PA Attorney ID # 41793

**LORRIE McKINLEY, Esquire**
Attorney ID No. 41211

**McKINLEY & RYAN, LLC**
238 West Miner Street
West Chester, PA 19382
Telephone (610) 436-6060
Fax (610) 436-6804

DATE: September 17, 2020