## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHERIE LEHENKY                                    :
            *Plaintiff*,

            v.                                    :         NO. 20-4573

TOSHIBA AMERICA ENERGY
SYSTEMS CORPORATION                               :
            *Defendant*.

## MEMORANDUM

**JONES, II      J.**                                          **February 22, 2022**

### I.  INTRODUCTION

Plaintiff brings the instant matter against her former employer for terminating her employment after a random drug test showed the presence of marijuana metabolites (specifically, tetrahydrocannabinol, otherwise known as "THC") in Plaintiff's system.   Plaintiff is suing under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq*.   Defendant has filed a Motion to Dismiss all Counts of Plaintiff's Complaint.   For the reasons set forth below, Defendant's Motion shall be granted.

### II.  FACTS

Plaintiff's Complaint alleges in pertinent part that in 2018, she was diagnosed with Panniculitis—an inflammatory autoimmune connective tissue disease.   (Compl. ¶ 15.) On or about January 5, 2019, Defendant, Plaintiff's employer for approximately eighteen (18) years, informed Plaintiff she had been randomly selected to undergo workplace drug testing in

1

accordance with the company's Drug Free Workplace Policy.   (Compl. ¶ 33, Ex. B.)   On

February 7, 2018, Plaintiff underwent said testing, at which time she was informed that an over-

the-counter CBD product she was taking for her condition would cause a positive result.

(Compl. ¶ 35.) After taking the test that day, Plaintiff emailed Defendant to find out what

"documentation" she needed to provide regarding her use of the product.   (Compl. ¶ 35, Ex. C.)

Defendant did not respond. (Compl. ¶ 39.)   On February 8, 2019, Plaintiff's drug test came back

positive for THC and Plaintiff's employment was immediately terminated by Defendant on the

basis of illegal drug use.   (Compl. ¶ 38.)

Plaintiff's Complaint further alleges that she began taking the CBD product "after

hearing reports of good results about the effectiveness" and "sought the advice of a licensed

health care physician to investigate whether this might help control her pain and improve her

overall functioning."   (Compl. ¶ 19.)   Plaintiff avers "[s]hortly thereafter, [she] began using a

CBD product and finally found some relief for her symptoms."   (Compl. ¶ 20.)   In support of

this averment, Plaintiff attaches a letter dated *February 8, 2019* from Paul F. Barone, D.O.,

which simply states "The above named patient was seen in this office on *1-09-19* and will be

able to return to work on *1-9-19*.   Patient was treated with CBD that may have a low level of

THC."   (Compl. Ex. A) (emphasis added).    This letter was faxed to an unidentified recipient

on February 15, 2019.   (Compl. Ex. A.)

## III.   STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion, district courts must first separate legal

conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be

discarded, and well-pled facts given the deference of truth. *Id*. at 210-211. Courts must then determine whether the well-pleaded facts state a "plausible claim for relief." *Id*. at 211. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice."   *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231).

## IV.  DISCUSSION

The first four Counts of Plaintiff's Complaint include claims for Disparate Treatment Under the ADA (Count I); Disparate Treatment Under the PHRA (Count II); Disparate Impact in Violation of the ADA (Count III); Disparate Impact in Violation of the PHRA (Count IIV).   As a preliminary matter, this Court notes that its "analysis of an ADA claim applies equally to a PHRA claim[.]" *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 306 (3d Cir. 1999).   Therefore, the analyses contained within the following discussion shall focus upon the ADA for purposes of both the ADA and PHRA claims presented by Plaintiff.

### A.  Counts I and II: Claims under the Americans with Disabilities Act and Pennsylvania Human Relations Act for Disparate Treatment

This Court recognizes that "[a]lthough Plaintiff need not establish a prima facie case of discrimination at this stage, 'the elements of a prima facie claim of disability discrimination remain the Court's "analytical guideline[s] in assessing the plausibility" of [Plaintiff's]

3

discrimination claims.'"   *Crawford*, Civil Action No. 20-871, 2020 U.S. Dist. LEXIS 110533, at

*8 (E.D. Pa. June 24, 2020) (citing *Dreibelbis v. Cty. of Berks*, 438 F. Supp. 3d 304, 314 (E.D.

Pa. 2020) (first alteration in original) (quoting *Fabian v. St. Mary's Med. Ctr.*, Civil Action No.

16-4741, 2018 U.S. Dist. LEXIS 147634, at *9 (E.D. Pa. Aug. 30, 2018)).   With that said, "[i]n

order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show

'(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to

perform the essential functions of the job, with or without reasonable accommodations by the

employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of

discrimination.'" *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v.*

*Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

      In accordance with applicable statutory law,

> [T]o be considered "disabled" under the ADA, a plaintiff must show that (1)
> [s/he] has a physical or mental impairment that substantially limits one or more of
> his major life activities, (2) [s/he] has a record of such an impairment, or (3) [s/he]
> is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Major life
> activities consist of tasks such as "caring for oneself, performing manual tasks,
> walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. §
> 1630.2(i) .

*Law v. Garden State Tanning*, 159 F. Supp. 2d 787, 791 (E.D. Pa 2001); *see also Niculcea v.*

*Stone Ridge Towne Ctr.*, Civil Action No. 1:17-CV-2096, 2020 U.S. Dist. LEXIS 3274, at *8

(M.D. Pa. Jan. 8, 2020) ("An individual is considered 'disabled' under the ADA if she has a

physical or mental impairment that substantially limits one or more of the major life activities of

such individual. The determination of whether an individual is substantially limited in a major

life activity must be made on a case by case basis.'") (internal citations and quotation marks

omitted).

To that end,

> A covered entity will be liable under the ADA **only if it knew of the disability at issue**. *See Rinehimer v. Cemcolift, Inc*., 292 F.3d 375, 380 (3d Cir. 2002); *Jones v. United Parcel Serv*., 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any ADA claim that the plaintiff be disabled and that the employer be aware of the disability."). Here, [Plaintiff] never alleged that [Defendant] was aware of any purported disability when it made its decision not to grant him the certifications he sought, which is sufficient on its own to dispose of [Plaintiff]'s claim under the ADA.

*Alja-Iz v. United States V.I. Bd. of Educ.*, 625 F. App'x 591, 593 (3d Cir. 2015) (emphasis added).

Further, the ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).   *Fabian*, 2018 U.S. Dist. LEXIS 147634, at *20.

Lastly, for purposes of what constitutes an "adverse action" as it pertains to an ADA discrimination claim, "termination is an adverse action."   *Tielle v. Nutrition Grp*., 810 F. App'x 160, 163 (3d Cir. 2020).

Drawing all reasonable inferences as it must from Plaintiff's Complaint and exhibits thereto, this Court infers Plaintiff suffered from a disability.   Specifically, Plaintiff speaks of enduring "a long period of physical discomfort and pain that significantly limited her ability to walk" and "[b]y the time of her diagnosis in 2018, Ms. Lehenky could only walk with the assistance of a cane due to the accumulation of fluid and tissue damage in her legs."   (Compl. ¶¶ 15, 17.)[1]   Inasmuch as walking is a major life activity, Plaintiff shall be afforded the inference

---

[1] Although Plaintiff's Complaint speaks to other physical issues that *could* arise from her condition, she does not allege she suffers from said issues.   (Compl. ¶ 16.)

that she suffered from a disability.   *See,* 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, ***walking,*** standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.") (emphasis added).

Notwithstanding the existence of any disability, Plaintiff has failed to sufficiently allege that she was otherwise qualified to perform the essential functions of the job—with or without reasonable accommodations by Defendant—or that she suffered an adverse employment decision *as a result of* *discrimination*.   First, Plaintiff simply concludes she "was qualified" and "faithfully performed her duties in accordance with the Defendant's expectations."   (Compl. ¶ 14; *see also* Compl. ¶ 45. ("In spite of her disabilities, Ms. Lehenky, was and continues to be qualified to perform the essential function of her job either with or without a reasonable accommodation.")   For purposes of an ADA assessment, conclusory averments such as these are not sufficient. Moreover, the Act provides "a qualified individual with a disability *shall not include* any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use[,]" thereby precluding Plaintiff from being deemed "qualified."   42 U.S.C. § 12114(a) (emphasis added).

Finally, although Plaintiff alleges she suffered an adverse employment action as a result of discrimination, the same is not possible if Defendant was not aware of Plaintiff's medical condition or "disability" when she was randomly selected to be drug tested pursuant to a policy that had been in effect since at least 2016,[2] and was terminated in accordance with said Policy. (Compl. Ex. B.)   Plaintiff's agreement to the terms of the Policy was a condition precedent to

---

[2] The most recent revision of the policy occurred on January 7, 2019.   (Compl. Ex. B)

employment with Defendant, therefore she was presumably aware of its terms and has waived any objection thereto by failing to inform Defendant of her CBD use in accordance with the Policy (prior to undergoing the test) and/or by not refusing to take the test. (Compl. Ex. B, §§ C.) The Policy provides a preemptive requirement for an employee in Plaintiff's situation: any employee taking prescription or over-the-counter drugs that could otherwise be deemed "illegal" pursuant to the Policy, was to provide documentation which identified the drug and dosage or else the drug would in fact be deemed "illegal," and "failure to report the use of such drugs to HR may result in disciplinary action, up to and including termination."   (Compl. Ex. B, §§ C.) Plaintiff failed to take this preemptive measure, yet her entire Complaint is premised on her contention that she was taking a drug that was legally prescribed by a licensed health care professional to treat her disability.   Said contention is belied by review of the physician's note attached to her Complaint, including the date of said note, the date of treatment, and the absence of any indication that said treatment was for her Panniculitis, and/or how long it was to continue and at what dosage.   (Compl. Ex. A.)

Plaintiff was notified by Human Resources on February 5, 2019, that she had been randomly selected to undergo drug testing.   (Compl. ¶ 33.)   Although the Policy requires the testing to occur "immediately" and Plaintiff was instructed via email sent by Human Resources at 9:58 a.m. on February 5, 2019 that she would "need to go to the clinic 'immediately' for the screening," Plaintiff did not present for screening until two days later. (Compl. ¶ 35, Ex. B, §§ E(5), Ex. C.)   On February 7, 2019 at 3:33 p.m.—*after* the test had already occurred—Plaintiff inquired with Defendant's Human Resources Department as to what documentation she would need to provide regarding the "over-the-counter supplement" she was taking for a medical

condition.   (Compl. ¶ 35, Ex. C.)   Human Resources did not respond to Plaintiff's inquiry.

(Compl. ¶ 39.)   Plaintiff's employment was terminated the following day.   (Compl. ¶ 38.)

As previously referenced, attached as an exhibit to Plaintiff's Complaint, is a note <u>dated</u>

<u>February 8, 2019</u> (one day after the drug test) from a doctor in Exton, Pennsylvania, indicating

he saw Plaintiff in his office on <u>January 9</u>, 2019, she was treated with CBD on <u>January 9</u>, 2019,

and she could return to work on <u>January 9</u>, 2019. (Compl. Ex. A.)   The note further states the

CBD "may have a low level of THC." (Compl. Ex. A.)   Significantly, the note is silent as to the

existence of any medical condition, the necessity for continued use of CBD, or the dosage with

which she was treated on that day.   In fact, Plaintiff tellingly makes no allegation that she was

terminated as a result of Panniculitis.   *See Anderson v. Norfolk Southern Ry. Co.,* Case No. 3:18-

cv-0190, 2021 U.S. Dist. LEXIS 62517, at *22-23 (W.D. Pa. March 31, 2021) ("In this case, it

cannot be disputed that [Plaintiff] suffered an adverse employment action. However, that adverse

employment action was not taken 'as a result of discrimination.'") (quoting *Gaul v. Lucent*

*Techs*, 134 F.3d 576, 580 (3d Cir. 1998)).   By reason of the terms of the Policy pertaining to

documentation requirements for situations such as this, the note prepared one day after Plaintiff

tested positive for illegal substances is ultimately of no consequence.

Plaintiff's disparate treatment claim alleges in part Defendant "intentionally and/or

recklessly proceeded with the automatic termination of her employment upon receipt of the

positive drug screen."   (Compl. ¶ 47.)   However, her assignment of intentional and/or reckless

behavior to Defendant's action of termination is not born out by the remaining facts of the

Complaint or exhibits attached thereto. Again, although Plaintiff alleges her medical condition

"significantly limited her ability to walk," her Complaint contains no facts to demonstrate

Defendant was aware of any mobility issues, as Plaintiff had been working remotely from her home since 2014—four years prior to her diagnosis.   (Compl. ¶¶ 13, 15.) [3,4]   Plaintiff's attempt to "unring" the bell after the test had occurred by now claiming the test was unlawful under the drug-testing provisions of the ADA, is futile. Plaintiff had been made aware of the Policy long before she began using the CBD product yet failed to follow the procedures for informing Defendant of same until <u>after</u> the test had been administered. *See Muhammed v. City of Phila.,* 186 F. App'x 277, 279 (3d Cir. 2006) ("We have already held that 'current' drug use is not protected under the ADA.") (citing *Salley v. Circuit City Stores,* 160 F.3d 977 (3d Cir. 1998)). Even then, the notification she provided did not comply with the requirements of the Policy and in fact, was sorely lacking any details relevant to the issue now before the court.

In view of the foregoing, Plaintiff cannot plausibly claim that her termination was the result of her disability and that she was treated in a disparate manner.   For this reason, Counts I

---

[3] Although Plaintiff's Complaint is devoid of any facts to indicate Defendant was aware of her disability, she provides information regarding this issue in her Response to the instant Motion. (Pl.'s Resp. Mot. Dismiss, n. 13.)   Pleadings may not be amended via briefing on a motion. *See Sonsini v. Leb. Cty.,* Civil No. 1:20-CV-00392, 2021 U.S. Dist. LEXIS 28047, at *72 n.5 (M.D. Pa. Feb. 16, 2021) ("Although a court on a motion to dismiss ordinarily must accept the allegations in the complaint as true, it is not compelled to accept assertions in a brief without support in the pleadings.   After all, a brief is not a pleading.") (citations and quotation marks omitted).   For the reasons discussed more fully above, this deficiency is without consequence.
[4] To the extent Plaintiff also claims she was terminated on the basis of being erroneously and discriminatorily perceived as being an illegal drug user, the same is without merit.   *See* Compl. ¶¶ 49-50. Although Plaintiff was terminated for use of an illegal drug without having provided proper prior documentation regarding use of same, there are absolutely no facts contained within Plaintiff's Complaint to plausibly show Defendant's termination decision was based on her disability or a purported "perception" by Defendant that she was an illegal drug "user."   *See Salley v. Circuit City Stores,* 160 F.3d 977, 981 (3d Cir. 1998) ("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.'") (quoting *Kelly v. Drexel University*, 94 F.3d 102, 109 (3d Cir. 1996)).

and II of Plaintiff's Complaint pertaining to same must be dismissed.

     **B.**  **Counts III and IV: Claims under the Americans with Disabilities Act and Pennsylvania Human Relations Act for Disparate Impact**

Defendant next seeks dismissal of Plaintiff's disparate impact claims.   Plaintiff's Complaint alleges in pertinent part that Defendant's Policy violates the ADA and PHRA because it "constitutes a discriminatory method of administration" and "has a disparate impact on qualified persons with disabilities[.]"   (Compl. ¶¶ 57, 61.)

It is well settled . . .

> "In order to establish a prima facie case of disparate impact, the plaintiff must provide evidence showing (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Quad Enters. Co., LLC*, 369 F. App'x at 206 (citation and internal quotation marks omitted). "Although the plaintiff need not show discriminatory intent under this theory, it must prove that the practice actually or predictably results in discrimination." *Id*. (alteration and internal quotation marks omitted). "This is generally shown by statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." *Cinnamon Hills*, 685 F.3d at 922 (alteration, internal quotation marks, and citation omitted).

*W. Easton Two, LP v. Borough Council of W. Easton*, 489 F. Supp. 3d 333, 363-364 (E.D. Pa 2020); *see also Acevedo v. City of Phila.,* 680 F. Supp. 2d 716, 741 (E.D. Pa. 2010) ("'A disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse impact on a protected group, and which cannot be justified as serving a legitimate business goal of the employer.'") (quoting *E.E.O.C. Metal Serv. Co*., 892 F.2d 341, 346 (3d Cir. 1990)).

With specific regard to causation, "'[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima

facie case of disparate impact.'"    *Hanrahan v. Blank Rome LLP*, 142 F. Supp. 3d 349, 354 (E.D. Pa. 2015) (quoting *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc*., 135 S. Ct. 2507, 2523, 192 L. Ed. 2d 514, 538 (2015)).

In the case now before this Court, Plaintiff has sufficiently identified an "outwardly neutral practice[]": Defendant's Drug Free Workplace Policy.   (Compl. ¶ 33, Ex. B.)   *See also Hanrahan,* 142 F. Supp. 3d at 354 ("A plaintiff must therefore meet two requirements to establish a prima facie case of disparate impact discrimination. First, the plaintiff must identify a specific employment practice or policy to challenge.") (citing *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994 (1988)).

However, Plaintiff has failed to plausibly plead causation.   In fact, her Complaint is completely devoid of any facts to demonstrate Defendant's Policy had a disparate impact on a "protected group" or any other employee, but for her conclusory statement that "Defendant's Drug-free Workplace Policy has a disparate impact on qualified persons with disabilities and is therefore facially invalid[.]"   (Compl. ¶ 62.)   In fact, the only termination on the basis of said Policy Plaintiff speaks of, is her own.   (Compl. ¶ 57.) This is simply insufficient to sustain such a claim.   *See Hanrahan,* 142 F. Supp. 3d at 354 ("[T]he plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the practice or policy resulted in discrimination.") (citing *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994 (1988)).

Accordingly, Defendant's Motion to Dismiss Counts III and IV of Plaintiff's Complaint shall be granted.

### C.  Count V: Illegal Medical Inquiry in Violation of the Americans with Disabilities Act

Plaintiff's final claim is that "Defendant's demand that [she] submit to testing for legal prescription drugs was not job-related or required by business necessity, and it constituted an illegal medical inquiry, in direct violation of the ADA. [sic] 42 U.S.C. § 12112(d)(4) & §12114." (Compl. ¶ 64.)

42 U.S.C. § 12112(d)(4) provides as follows:

> (4) Examination and inquiry.
>
>> (A) Prohibited examinations and inquiries. A covered entity shall not require a medical examination ***and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability***, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 USCS § 12112(d)(4)(A) (emphasis added).

In this case, Plaintiff makes no allegation that Defendant inquired as to whether she had a disability or as to the nature or severity of any disability.   As such, §12112(d)(4)(A) is inapplicable to Plaintiff's situation and she cannot rely upon same for relief.

With respect to 42 U.S.C. § 12114, said Subsection (a) states: "For purposes of this title, a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."   42 U.S.C. § 12114(a).   As discussed above, Plaintiff has not sufficiently pleaded she was "qualified" under the ADA. Nevertheless, whether Plaintiff has sufficiently pleaded the element of "qualified" is irrelevant under the ADA if she was engaging in the illegal use of drugs, as provided for in Defendant's Policy. Because Plaintiff was aware of the fact that the CBD she was treated with on January 9, 2019 could "have a low level of THC[,]" Plaintiff's failure to inform

12

Defendant of her continued use of same constitutes an "illegal use of drugs" under the Policy and cannot be deemed an illegal medical inquiry. *See* Compl. Ex. A.

Section 12114 further provides in pertinent part:

> (d) Drug testing.
>
>> (1) In general. For purposes of this title, a test to determine the illegal use of drugs shall not be considered a medical examination.
>>
>> (2) Construction. **Nothing in this title shall be construed to** encourage, **prohibit**, or authorize **the conducting of drug testing for the illegal use of drugs by** job applicants or **employees or making employment decisions based on such test results**.

42 USCS § 12114(d) (emphasis added).

Plaintiff's claim that she was tested for legal prescription drugs and said testing constituted an impermissible medical inquiry under the ADA is without merit. The drug test report submitted by Plaintiff as an exhibit to her Complaint, indicates she was tested for the following substances: Amphetamines, Barbiturates, Benzodiazepines, Cocaine Metabolites, Marijuana Metabolites, Methadone, Opiates, Phencyclidine, and Propoxyphene. (Compl. Ex. D.) Several of these drugs could be deemed "legal" if properly prescribed by a licensed medical physician and taken accordingly (under said physician's supervision) by the patient. Defendant's Policy provides for this scenario in Subsection C. (Compl. Ex. B, §§ C.) Our sister Circuit has determined that an employer's inquiry into the prescription drugs an employee might be taking for purposes of enforcing a workplace drug testing policy, is not a disability-related medical inquiry. *Turner v. Phillips 66 Co.*, 791 F. App'x 699, 709 (10th Cir. 2019); *see also Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215-1216 (11th Cir. 2010) ("In addition to allowing inquiries directed at an applicant's ability to perform job-related functions,

13

the ADA recognizes an exemption for drug tests.") (internal citation omitted); *Vuono v. Consol. Edison of N.Y., Inc*., 18-CV-1635, 2019 U.S. Dist. LEXIS 97930, at *18 (S.D. N.Y. June 11, 2019) ("[I]nterpreting 'inquiry' to encompass drug tests would appear to render Section 12114(d)(1)—which excludes 'a test to determine the illegal use of drugs' from the definition of 'medical examination'—meaningless because the same test Congress intended to allow as a permissible 'medical examination' would be disallowed as an unlawful 'medical inquiry.'"); *Upton v. Day & Zimmerman NPS*, Civil Action No. 2:15-CV-02131, 2018 U.S. Dist. LEXIS 7758, at *17 (N.D. Ala. Jan. 18, 2018) ("[A] drug test is not a medical inquiry under § 12112(d)(2)(A)."); *EEOC v. Grane Healthcare Co*., Civil No. 3:10-250, 2015 U.S. Dist. LEXIS 123133, at *141-142 (W. D. Pa. Sept. 15, 2015) (in assessing a drug testing claim under 42 U.S.C. § 12112(d)(2), the court concluded said test "was administered for the sole purpose of detecting illicit drug use. Since [the prospective employee] tested positive for illicit drugs, and [Defendant] had no reason to believe she was treating with legally prescribed Methadone, [Defendant's] failure to hire her was justified.").

Notwithstanding the foregoing, a condition precedent for becoming or remaining an employee of Defendant, was compliance with the company's Drug Free Workplace Policy. (Compl. Ex. B, § 801(G).)   This Policy was included in the Employee Handbook no later than March 1, 2016.   (Compl. Ex. B.)   It was not until Plaintiff failed the drug test on February 7, 2019, that the requirements of the Policy regarding prescribed and over-the-counter drugs became objectionable to her.   Although Plaintiff asserts she had been using the CBD product since 2018, her Complaint is devoid of any indication she informed Defendant of same prior to the test the following year.   Accordingly, Plaintiff's final claim is without merit and shall be

14

dismissed.

### D.  Amendment

Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1).

Inasmuch as the conditions for amendment as a matter of course are absent here, amendment is only permitted by leave of court or with the written consent of the opposing party. FED. R. CIV. P. 15(a)(2). Leave must be freely granted "when justice so requires." *Id.*  However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the legal standards of Rule 12(b)(6) must be applied. *Id.*

In this case, Plaintiff's Complaint is devoid of any fact to plausibly show her termination was the result of discrimination on the basis of her Panniculitis condition or her use of a an allegedly legal drug that was improperly perceived to be illegal by Defendant.   The Policy speaks for itself.   Plaintiff failed to comply with said Policy—in several respects.   Moreover, Counts I through IV of Plaintiff's Complaint are premised on her contention that she was taking a drug that was legally prescribed by a licensed health care professional to treat her disability. Said contention is belied by review of the facts set forth in the Complaint, in conjunction with the physician's note attached to her Complaint, including the date of said note, the date of treatment, and the absence of any indication that said treatment was for her Panniculitis, and/or how long it was to continue and at what dosage.   (Compl. Ex. A.)   Just as Defendant's Policy

speaks for itself, so too does the physician's note attached to Plaintiff's Complaint.

This Court notes Plaintiff has not requested leave to amend.   Nevertheless, based upon the court's review of her Complaint and the discussion set forth above, any attempt to amend would be futile.   Accordingly, dismissal of Plaintiff's claims shall be with prejudice.[5]

## V.      CONCLUSION

For the reasons set forth hereinabove, Defendant's Motion to Dismiss shall be granted and Plaintiff's Complaint shall be dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II      J.

---

[5] This Court is aware of the Policy's Standard Procedures regarding positive results being reviewed by a Medical Review Officer and discussed with the employee.   (Compl. Ex. B §§ F1.)   Although Plaintiff's Complaint does not reference this particular provision of the Policy, it does allege she was terminated "with no individualized inquiry as to whether 1) the product she was using was a 'drug' under the Policy and/or the ADA . . . and/or 2) whether the ADA protected Plaintiff's use of the CBD product even if it was a 'drug,' because it was supervised by a licensed health care professional and therefore did not constitute the 'illegal use of drugs.'" (Compl. ¶ 47) (citation omitted).   In any event, a potential failure by Defendant to act in accordance with Subsection F1 of Policy does not change the fact that Plaintiff cannot plausibly plead discrimination claims under the ADA and PHRA.